# The Schuylkill Navigation Company *v.* McDonough.

The remedies against a canal company, provided by their act of incorporation, for injuries arising from the construction of the works, do not exclude the common law remedies for injuries arising from an abuse of their privileges, or for the neglect of their duties.

They are liable for injuries sustained by a riparian owner, in consequence of an overflow of water, caused by the pool of their dam being filled up with dirt, &c., without regard to the question, by whose act such filling up was occasioned.

It is their duty to keep the works in order, and to preserve to the riparian owners all their rights, except so far as they are affected by the construction of the works; and if their dam become filled up by the unlawful acts of third persons, their remedy is against those who thus contribute to the injury.

ERROR to the Common Pleas of *Schuylkill county.**

This was an action on the case by Michael McDonough against The President, Managers, and Company of the Schuylkill Navigation Company, for unlawfully raising the water of the Schuylkill river and of Mill creek, whereby the plaintiff's cellar was rendered wet and unwholesome, and the health of his family injured.

The first count of the declaration charged that the injury complained of was caused by the unlawful act of the defendants, in raising the water by means of a dam; the second, by increasing the height of the said dam; the third, by keeping up the said dam; and the fourth charged that the company negligently suffered their dam to be filled with dirt, and thereby caused the water of the river and of Mill creek to flow and penetrate into the plaintiff's cellar; and also thereby caused the obstruction of Mill creek with dirt, so that the water, soaking from the surface of the ground sloping towards said creek, and percolating through it, was caused to flow into the plaintiff's cellar.

In 1827, the defendants, in pursuance of their charter, erected a dam, known as dam No. 1, in the Schuylkill river, about 300 yards below the mouth of Mill creek. It was occasionally raised, and the pool deepened, but in consequence of the difficulty in maintaining the requisite depth of water, arising from the deposits of coal dirt, &c., swept into it from the collieries above, the defendants, in 1852–3, ceased to use the landings in that pool, and supplied their place by new landings, erected below the dam. The dam, however, was retained; its existence being deemed essential to the maintenance of the navigation immediately below. The plaintiff alleged that his cellar was rendered wet and unwholesome,

* This case was decided in 1857.

by the omission of the defendants to clean out the pool of the dam.

On the trial of the cause, the court below (HEGINS, P. J.) delivered the following charge to the jury:—

" The plaintiff is the owner of a house and lot in the borough of Port Carbon. He alleges that defendant has suffered dam No. 1, adjoining that borough, to fill up with coal dirt, sand, and debris, and thereby caused the bed of Mill creek, which creek flows through the said borough into the pool of the dam, to be also filled up with coal dirt, sand, and debris, thereby causing the water to overflow the natural banks of the creek, and to percolate through the adjacent soil into the cellar and premises of the plaintiff. To recover damages for this injury, he has brought this suit.

" The company defendant was incorporated by the Act of 8th of March 1815, and was authorized to make a slack-water navigation of the Schuylkill river, from the city of Philadelphia to the mouth of Mill creek in the county of Schuylkill. The powers granted to the company are very extensive, and among them is the right to erect dams and locks in the river. The purpose for which these powers were granted, was ' to make a complete slack-water navigation' between the points named, ' so as to admit a safe and ready passage for loaded boats, arks, and other vessels up, as well as down, said river.' This was an object of great public interest and benefit; and all the powers and privileges necessary to accomplish it, were granted to the company by the act of incorporation. They were to be used, as well for the public benefit, as the private emolument of the stockholders; but not with a *wanton* disregard of the rights of private property. They were authorized to take private property needful for the purposes of the company, and to erect dams and overflow the lands of adjacent riparian owners, when necessary. All the rights granted were to be exercised in subordination to, and for the accomplishment of the great object the legislature had in view in granting them, and in such manner as to infringe upon private property no further than necessary.

" The dam, known as dam No. 1, was erected by the company at the borough of Port Carbon, for the purpose of rendering the river navigable above the location of the dam. They built it as high as they thought necessary for that purpose; and the damages, if any, suffered by the riparian owners from the overflow of water caused by the dam at that height were, very likely, ascertained and paid. The company had the right to raise the height of the dam, if it was necessary, to enable larger boats than those formerly used to navigate the river above the dam; but they had no right to increase the height of the dam, if the necessity for it arose from their neglect to keep the pool of the dam clear of coal dirt, sand, and debris; otherwise they might do so, from time to time, until

[The Schuylkill Navigation Company *v.* McDonough.]

they caused the water to overflow the whole town of Port Carbon and the adjacent country. The exercise of such power by the company was never contemplated by the legislature, nor warranted by their charter. Powers and privileges are granted to, but duties and obligations are also imposed upon, the company; and by the 20th section of the original act of incorporation, they are expressly obligated 'to remove any obstacle which may occur, so that boats, arks, rafts, or other vessels, may at all times safely navigate the said river.' A penalty of $100 is imposed for any neglect of this obligation; but that will not prevent the plaintiff from recovering damages for any injury to his property, caused by such neglect. It was, then, the duty of the company, implied from the purpose for which their privileges were granted, and directly imposed by the letter of the statute, to keep the pool of dam No. 1 clear and free from coal-dirt, sand, gravel, and other materials, so that boats might navigate it, if that could be done without increasing the height of the dam. It was a violation of their duty to permit the pool of the dam to fill up with coal-dirt, sand, and debris, washed into it from Mill creek and the river above, so as entirely to destroy the navigation of the river at and above that point. The company were authorized to erect a dam to form a slack-water navigation of the river, not to create a reservoir for the reception of coal-dirt and other materials. When they ceased to use it for the former object, they could not maintain it for the latter purpose, to the injury of the property lying adjacent or along the banks of Mill creek. When the company ceased to use the dam for navigation, they were bound to take it away, if it created a public nuisance, or injured private property. The fact that the coal-dirt, which formed the larger portion of the deposit, was thrown into the streams above, or placed along their margin by the coal operators or miners, and then carried and floated by the current into the pool of the dam, will not excuse the company, or relieve them from liability for the injurious results. They might have foreseen the consequences, and prevented the miners and operators from putting coal-dirt into the stream, or so near thereto that the natural drainage or water's shed would carry it into the streams. If, in doing so, the miners and operators created a public nuisance, and caused injury to property, they could have been compelled to stop, by an indictment or injunction, at the instance of the company; and they cannot shield themselves from responsibility by permitting their property to be destroyed, if the property of the plaintiff was thereby injured.

"The first question of fact presented to the jury by the evidence, and the instructions of the court upon the law applicable to the case, is, was the property of the plaintiff injured by the neglect of a duty by the company imposed upon them by law; or, in other words, was the filling up of the natural channel of Mill creek

caused by the deposit of coal-dirt, sand, and other materials, in the pool of dam No. 1? (Here the court referred to the evidence upon the subject.) If the jury believe, from the evidence in the cause, that the injury was so caused, and that the coal-dirt and sand would not have accumulated in Mill creek, but been carried down into the river Schuylkill by the natural current of the creek, if the pool of the dam had not been permitted to fill up, your verdict should be for the plaintiff. But if the deposit in Mill creek, and the consequent injury to plaintiff's property, arose from backing the water up the creek by the dam, at a height necessary for navigation, then the defendants would not be liable to plaintiff in this action, although they might be in another proceeding; and that, although the dam afterwards filled up and was abandoned by defendants, and this is the only other question of fact for your decision.

" The company had a right to erect the dam of the height they deemed sufficient at the time, and to increase the height, if necessary, by the increased size of the boats or any other cause, other than the neglect of the defendants to keep the pool of the dam free from coal-dirt and debris; and if the exercise of this right by the company caused the channel of Mill creek to fill up, and the plaintiff's property was thereby injured, he cannot recover his damages in this action. (Here the court referred the jury to the evidence.)

" If the jury find for the plaintiff, their verdict should be for the damages he has sustained since he became the owner of the property in question."

The counsel of the respective parties presented certain points in writing, upon which they requested the court to instruct the jury. The plaintiff's points were as follows:—

1. That it is a universal principle that he who to the injury of another neglects a duty that by law he ought to perform, is liable to compensate the injury.

2. That it was the duty of the Schuylkill Navigation Company to keep their dam No. 1 clear, for the purposes of a canal and slack-water navigation, and this duty is implied in the grant of their franchises; and that, thereupon, any damages resulting from such neglect, cannot be regarded as legitimately resulting from the construction of the dam, but from neglect and improper management after the same had been constructed.

3. That, if the property of the plaintiff was damaged by the neglect of the company to keep their dam clear, and whereby it filled with sand, coal-dirt, and other materials, so as to cause Mill creek to be filled up in an extraordinary manner, and to cause the water to flow, rise, and remain upon the premises of the plaintiff, whereby the same was injured, the plaintiff is entitled to recover damages to the extent of such injury.

4. That the Schuylkill Navigation Company having, by their own act, fixed the height of their dam No. 1 at the period of their enlargement, and upon which height riparian owners, and others injured by said dam, could alone predicate the extent of their damages, and such height being in fact sufficient for the purpose of the company in maintaining a canal and slack-water navigation (if the dam had been kept clean); the company had no right or power to increase the height of the water in the dam, by raising the same with the iron pins and planking as described by the witnesses, and especially if the jury believe that the occasion therefor was merely to obviate the necessity for cleaning said dam; and therefore any damages occasioned thereby to plaintiff, resulting from thus increasing the height of the water in the dam, and deadening the current to a higher point up Mill creek, may be recovered in this suit.

The learned judge answered these points in the affirmative.

The following points were presented by the defendants:—

1. The building of dam No. 1 in the Schuylkill river, and the raising of it from time to time to answer the purposes of the navigation, were acts done under the charter of the company; and the defendants cannot, in this action, be made to answer for any consequential or direct injury to the plaintiff's property, arising from the construction or the raising of said dam.

Answer.—"The court answer this point in the affirmative; but, as part of their answer, refer the jury to their affirmance of the proposition contained in the plaintiff's fourth point."

2. If the coal operators above the dam in question either threw the coal-dirt, or caused it to washed, into the stream, so as to fill it up, thereby destroying the navigation as well as injuring the plaintiff's property, it is an injury done by the coal operators, and not by the company; and the defendants cannot be made to answer in damages for the acts of other persons, but recourse must be had to them.

Answer.—"The court instruct the jury, that if the jury believe from the evidence that the defendants neglected to perform the duty imposed upon them by law, to keep the dam No. 1 free and unimpeded, for the purposes of navigation, by coal-dirt thrown into Mill creek, or its tributaries, by coal operators, and washed into the dam by the current of the water—and thereby the plaintiff has been injured by the throwing of the coal-dirt into the stream, which otherwise would not have injured the plaintiff—he may recover in this action such damages as he has suffered."

3. The company may abandon any part of the canal and navigation which they find inconvenient and burthensome to maintain, without subjecting themselves to an action for damages by the owners of property on the line of the part so abandoned, and are

not bound to keep up the navigation for the benefit of such property-holders.

Answer.—" The first proposition contained in this point may or may not be so, depending upon the circumstances of the particular case. The company are not bound to keep up the canal for the benefit of the holders of property along the line—but if, by abandoning a portion of the canal, they create and permit a nuisance to the injury of a property-holder, they may subject themselves to an action of damages for such injury."

4. By the 20th section of the act incorporating the said company, they are made liable to the penalty of one hundred dollars, to be recovered before any justice of the peace, if they neglect to keep in repair any dam or sluice constructed by them, or permit obstructions to the safe navigation of the river; but this provision does not make the company liable for injuries to lands and tenements on the margin of the river, caused by the filling of the pool above such dam by the accumulation of coal-dirt or sediment therein. This provision is designed for the benefit of persons using the navigation.

Answer.—" The court answer this point in the negative."

5. The owner only can recover for an injury done to the property; and if, at the time of the injury complained of, the plaintiff was not the owner, but purchased the property since the injury, he cannot recover.

Answer.—" The court answer this point in the affirmative."

To this charge the defendants excepted; and a verdict and judgment having been rendered for the plaintiff for $275, they removed the cause to this court, and here assigned the same for error.

*W. M. Tilghman* and *Meredith*, for the plaintiffs in error, cited Schuylkill Navigation Co. *v.* Thoburn, 7 *S. & R.* 421; Shrunk *v.* Schuylkill Navigation Co., 14 *Id.* 83; Lehigh Bridge Co. *v.* Lehigh Navigation Co., 4 *Rawle* 9; Monongahela Navigation Co. *v.* Coons, 6 *W. & S.* 114; s. c., 6 *Barr* 381; Henry *v.* Pittsburgh Bridge Co., 8 *W. & S.* 85; Philadelphia & Trenton Railroad Co., 6 *Wh.* 45; China *v.* Southwick, 3 *Fairf.* 238; Bell *v.* McClintock, 9 *Watts* 120.

*F. W. Hughes* and *Wells*, for the defendant in error, cited Barclay *v.* Commonwealth, 1 *Casey* 503.

The opinion of the court was delivered by

LOWRIE, J.—We suppose that when this company gave in evidence their charter, or when it was treated as in evidence, this fully sustained their plea to the first three counts; and this throws

[Schuylkill Navigation Company *v.* McDonough.]

the raising of the dam out of the question, and the court threw it out.

The verdict can, therefore, be founded only on the fourth; and we must see whether this count, and the legitimate evidence under it, furnish a sufficient foundation for the verdict. The count charges that the company had negligently suffered their dam to be filled with dirt, and thereby caused the water of the river and of Mill creek to flow and penetrate into the plaintiff's cellar, and also thereby caused the obstruction of Mill creek with dirt so that the water, soaking from the surface of the ground sloping towards said creek and percolating through it, was caused to flow into the plaintiff's cellar.

All the principles that are necessary for the ruling of this case may be stated in a few plain propositions.

1. The remedies against the company, provided by the act of incorporation, are for the injuries arising from the construction of the dam as a part of the navigable highway; and they do not exclude the common law remedies for injuries arising from an abuse of the privileges granted to the company, or for the neglect of its duties.

2. The dams and locks of the company were constructed as part of the navigable highway, and the dam and lock No. 1 could not have been lawfully constructed for any other purpose, where they are; and the company had no right to convert them into a mere receptable of the dirt washed down from the country above, to the injury of the riparian inhabitants.

3. The company, as custodians of a navigable highway, stand in two distinct relations to the public—one to navigators and the other to the riparian inhabitants; and out of these relations arise distinct classes of duties and laws.

To navigators, they owe the right of a sufficient highway, and to the riparian inhabitants, the right to have the natural flow of the river preserved, except so far as by their charter they may change it for the purpose of improving its navigability; and the injuries and remedies correspond to those relations.

4. The company cannot excuse themselves for suffering the dam to be and remain filled up, to the injury of the riparian inhabitants, by showing that it would not have happened, except because of the deposits of dirt improperly made by others in and near the upper part of the stream; because the company have the care and control of the dam, and it occasioned the deposit there, and they may have a full remedy against all who wrongfully contributed to filling it up.

Our brother BLACK concurred with us in this judgment, before his resignation.

The case was tried on these principles, and therefore the judgment is affirmed.